J-S02018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEREMY BROWN | |
| Appellant | No. 3598 EDA 2014 |

Appeal from the Judgment of Sentence November 6, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003340-2014

BEFORE:  SHOGAN, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.:                **FILED JANUARY 13, 2016**

Jeremy Brown appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following a non-jury trial[1] in which he was convicted of aggravated assault,[2] robbery,[3] criminal conspiracy,[4] carrying a firearm without a license,[5] carrying a firearm on

---

[1] Brown was tried with his co-defendant, Karaun Jones, who has filed a separate appeal at docket number 3412 EDA 2014.

[2] 18 Pa.C.S. § 2702(a)(1).

[3] 18 Pa.C.S. § 3701(a)(1)(ii).

[4] 18 Pa.C.S. § 903(c).

[5] 18 Pa.C.S. § 6106(a)(1).

public streets or public property,[6] and possessing an instrument of crime.[7]

After review, we affirm.

The trial court summarized the facts of this matter as follows:

At trial, the Commonwealth first presented the testimony of Philadelphia Police Officer Jeffrey McMahon. Officer McMahon testified that, on January 13, 2014, at approximately 7:30 p.m., he received a radio call directing him to the 2400 block of North 22nd Street in Philadelphia. There, he encountered the complainant, Joel Flowers, lying in the street, suffering from a gunshot wound. Based on information gathered from Mr. Flowers, Officer McMahon submitted flash information describing the perpetrators as two black males, both 20 years old and wearing black hooded sweatshirts, one armed with a black revolver. Officer McMahon then transported Mr. Flowers to Temple University Hospital for treatment. He testified that two individuals matching the descriptions – [Brown] and Co-Defendant Karaun Jones – were brought to the hospital for identification, and Mr. Flowers positively identified them as his assailants.

Philadelphia Police Officer Damien Stevenson testified next for the Commonwealth. Officer Stevenson testified that on January 13, 2014, at approximately 7:30 p.m., he received a radio call of a shooting, directing him to the 2400 block of North 22nd Street. Approximately one minute later, the Tactical Aviation Unit (police helicopter), reported that it was following two males walking southbound on the 2000 block of North 23rd Street, one of whom just crossed to the other side of the street. Officer Stevenson immediately proceeded to that location, where he encountered [Brown] on the west side and Co-Defendant Jones on the east side of the street. He ordered the males to stop, at which time [Brown] took off running, while Co-Defendant Jones froze in place. Officer Stevenson pursued [Brown] on foot, while back-up officers apprehended Co-defendant Jones. With the

_____

[6] 18 Pa.C.S. § 6108.

[7] 18 Pa.C.S. § 907(a).

- 2 -

assistance of police helicopter, Officer Stevenson apprehended [Brown] inside an alley between 23rd and Crosby Streets.

The Commonwealth next presented eyewitness Rasheia Lyles. Ms. Lyles testified that on January 13, 2014, at approximately 7:30 p.m., she was walking northbound on the 2400 block of North 22nd Street, when she observed three males in close proximity to each other. At first blush, she thought the males were friends; within seconds, however, she heard a gunshot, and saw the complainant, Joel Flowers, running toward her, with the two other males fleeing in the opposite direction.

She testified that Mr. Flowers collapsed to the ground, clutching his right bicep and yelling "my arm, my arm." Ms. Lyles called the police, who arrived at the scene shortly thereafter. Upon providing physical descriptions to the police, she was transported to 23rd and Diamond Streets, where she positively identified [Brown] as one of the assailants.

Additionally, at 8:05 p.m. on the same date – i.e., 35 minutes after the incident – Ms. Lyles was interviewed by Philadelphia Police Detective Martin. According to her recorded statement, which she signed and adopted at 8:58 p.m., she not only provided physical descriptions of both perpetrators, but positively identified them as well[.]

. . .

The Commonwealth also called Detective Paul Wong to the stand. Detective Wong testified that, approximately two hours after his arrest, Co-Defendant Jones provided a statement in which he claimed that he saw another male "running fast" on 22nd Street, and decided to run with him, even though he didn't know what happened[.]

. . .

Finally, the Commonwealth presented the complainant, Joel Flowers. Mr. Flowers testified that on January 13, 2014, he was walking on the 2400 block of North 22nd Street, when two males – whom he identified as [Brown] and Co-Defendant [Jones] – walked toward him from the opposite direction. When [Brown] and Co-Defendant Jones walked past him, Mr. Flowers heard "Yo," prompting him to turn around, at which point [Brown] pointed a handgun at his face and said, "Give me what you got." Co-defendant Jones stood next to [Brown] as he pointed the

gun; Mr. Flowers reached into his pockets, pulled out his hands, and with his palms up, said, "I ain't have nothing." When he turned to walk away, [Brown] shot him in the right bicep. [Brown] and his cohort then fled southbound on 22nd Street, and Mr. Flowers collapsed on the ground.

Mr. Flowers testified that he then was approached by a woman (Ms. Lyles), who called the police and stayed with him until they arrived. After describing his assailants to police, he was transported to the emergency room at Temple University Hospital. Within two hours of the robbery, Mr. Flowers positively identified [Brown] and Co-Defendant Jones as his assailants, and also positively identified them in court.

Trial Court Opinion, 7/2/15, at 2-6 (citations omitted).

Brown was sentenced on November 6, 2014, to an aggregate term of 7 to 14 years' incarceration. Brown timely filed a notice of appeal and court-ordered concise statement of errors complained of on appeal. Brown raises the following issues for our review:

1. Is [Brown] entitled to an arrest of judgment on all charges where the evidence is insufficient to sustain the charges?

2. Is [Brown] entitled to a new trial where, as here, the greater weight of the evidence does not support the verdict?

Brief for Appellant, at 3.

In considering sufficiency of the evidence claims,

we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. . . . Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. Of course, the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.

***Commonwealth v. Watley***, 81 A.3d 108, 113 (Pa. Super. 2013) (en banc). The Commonwealth can satisfy its burden via wholly circumstantial evidence. ***Id.***

Here, Brown concedes that "the perpetrator [engaged] in an [a]ggravated [a]ssault and [r]obbery and hence, counsel will not engage in [an] analysis of the elements of those crimes nor of [firearms charges] or [c]onspiracy. However, the Commonwealth still must prove that [Brown] was properly identified." Thus, Brown does not dispute that the Commonwealth presented sufficient evidence of each element of the crimes in this matter; rather, the sufficiency claim is limited to whether Brown was adequately identified as the perpetrator.

Brown argues that Flowers did not positively identify Brown at trial based upon the following exchange during direct examination:

> Q: Do you see either of [the two assailants] in this courtroom now?
>
> A: Yeah. They look different. You know what I'm saying? But they look familiar, yeah.
>
> Q: Are those the individuals that you saw that night?
>
> A: Yeah.

N.T. Trial, 9/3/14, at 143. Flowers went on to identify Brown as the individual who had demanded his possessions and shot the gun. ***Id***. Brown's argument myopically focuses on Flowers' use of the word "familiar" to argue that Flowers did not positively identify Brown. However, this argument is belied by the record, since Flowers affirmatively stated that

Brown and Jones were the perpetrators and identified the role each had in the incident. Moreover, both Flowers and Lyles positively identified Brown as one of the perpetrators immediately after the incident occurred, and Lyles also identified Brown during trial. For these reasons, Brown's sufficiency argument is without merit.

Brown also asserts that he is entitled to a new trial because the weight of the evidence does not support the verdict. However, before reaching the merits of that question, we must determine whether Brown's weight claim has been properly preserved for consideration on appeal. **Commonwealth v. Mikell**, 968 A.2d 779, 780 (Pa. Super. 2009). The relevant rule, Pennsylvania Rule of Criminal Procedure 607, provides as follows:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
>> (1) orally, on the record, at any time before sentencing;
>>
>> (2) by written motion at any time before sentencing; or
>>
>> (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). Here, Brown did not raise his weight claim until he included it in his concise statement filed pursuant to Pa.R.A.P. 1925(b). Thus, Brown has waived this claim by failing to comply with Rule 607, and we are precluded from engaging in appellate review.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/13/2016</u>